

ENTERED
08/08/2008

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: § <br> NATHAN ELIAZER SCHWARTZ; dba § <br> PPP INVESTORS NO. II; dba ALL ABOUT § <br> NURSES, LLC; dba 3 PIPES 1997 § <br> CORPORATION; dba PINEY POINT § <br> CUSTOM HOMES, LLC; dba SAVION § <br> ESTATE HOMES, INC.; dba PPP § <br> BUILDERS LLC; dba PRIME § <br> PREFERRED PROPERTIES CO, LLC; dba § <br> PPP DEVELOPMENT CO., LLC; dba § <br> KAPPA DEVELOPMENT CO.; dba PPP § <br> INVESTORS NO. 1; dba MAXNET, INC.; § <br> dba RM ARCHITECTS, LLC; dba PRO § <br> METAL PRODUCTS, INC.; dba ELIAZAR § <br> TRACT CO., INC.; dba NES 2001 § <br> DEVELOPMENT CO., LLC; dba JENNY- § <br> IRIS ENTERPRISES, LLC; dba PRIME § <br> KNOW DEVELOPMENT CO., LLC; dba § <br> 101 DETERING DEVELOPMENT CO. § <br>     Debtor(s) § <br> § <br> § <br> STAR HIGH YIELD INVESTMENT § <br> MANAGEMENT CORP., INC. § <br>     Plaintiff(s) § <br> § <br> VS. § <br> § <br> NATHAN ELIAZER SCHWARTZ, et al § <br>     Defendant(s) § | CASE NO: 07-30508 <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>CHAPTER 7 <br><br><br><br><br><br>ADVERSARY NO. 07-03170 | |

## MEMORANDUM OPINION

### Background

In the late 1990's, Plaintiff Star High Yield Investment Management Corp., Inc. ("Star High"), and defendant Nathan Schwartz ("Schwartz") formed a real-estate joint-venture. The joint-venture established five separate entities through which land would be purchased and town-

1

houses constructed and sold (the "Prime Group").[1] Star High and other investors provided the capital investment for the venture in the amount of approximately $2 million.[2] Schwartz was designated the Prime Group's manager. As manager, Schwartz was to purchase land, obtain financing secured by the land, and use the financing to construct townhouses. The Prime Group's governing regulations provided no compensation for Schwartz. Rather, Schwartz was to share in the venture's profits as a partner.

Schwartz purchased real estate and constructed homes pursuant to the agreement. However, the Prime Group never produced returns. By one estimate, the Prime Group lost approximately $1.5 million.

In early 2003, Star High filed a state court lawsuit against Schwartz alleging breach of fiduciary duty, common law fraud, fraud in a real estate transaction, violation of the Texas Securities Act, and breach of contract. The lawsuit sought damages and a restraining order to prevent further losses. The state court issued a temporary restraining order. However, the state court never issued a final judgment on Star High's claims. While the lawsuit remained pending, Star High and Schwartz executed a "Comprehensive Settlement Agreement" (the "Agreement"). The Agreement contained mutual releases for all claims arising prior to the Agreement's execution.[3] The Agreement also contained a "No Admissions" provision in which the parties

---

[1] The Prime Group consisted of: Prime Preferred Properties, Inc.; PPP Development Company, LLC; PPP Investors No 1, LLC; PPP Investors No. 2, LLC; Prime/Knox Development, LLC; and DeValle Creek Company, LLC.

[2] The approximately $2 million investment included an initial investment of $1 million and subsequent investments, bridge-loans, and personal loans.

[3] Specifically, the Agreement states: "Upon execution of this Comprehensive Settlement Agreement . . . the Parties will dismiss with prejudice the respective claims, if any, they have asserted against one another in the Lawsuit." The "Release of Claims" section also included paragraphs in which both parties agreed to "release, discharge, and forever hold harmless [the parties] . . . from any and all Claims that have accrued or may ever accrue . . . which relate to any act, omission or event occurring before this Agreement is executed."

clarified that neither party admitted any liability.[4] Pursuant to the Agreement, Schwartz executed a $750,000.00 promissory note in favor of Star High.

Approximately one year later, Schwartz defaulted on the promissory note. Prior to the default, Schwartz paid $39,000.00 on the note. Star High filed another state court lawsuit for breach of the promissory note. On November 4, 2005, the state court issued a final judgment in favor of Star High and for the amount due under the promissory note at a contractual rate of 18%, plus accrued interest in the amount of $104,239.58, $4,000.00 in attorneys' fees, and 6.75% interest on the attorneys' fees.

In January of 2007, Schwartz filed a chapter 7 bankruptcy petition. In March, Star High filed this adversary proceeding objecting to the discharge of the debt embodied by the state court judgment. Star High alleges that the promissory note arose from settlement of Star High's fraud-based claims. Consequently, Star High contends that the debt is a debt that arose from fraudulent conduct and is nondischargeable under 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), 523(a)(19)(A)(ii), and 523(a)(19)(B)(ii).

Both parties sought summary judgment. On October 17, 2007, the Court denied all summary judgment motions. Schwartz's summary judgment motion argued that Star High's debt arose from a settlement agreement, not fraud. Star High did not suggest that the settlement agreement was procured by fraud. The Court's October 17, 2007 Memorandum Opinion rejected Schwartz's argument. *In re Schwartz*, 2007 WL 3051865, (Bankr. S.D. Tex. Oct. 17, 2007). The Supreme Court requires this Court to look beyond a settlement agreement to the underlying conduct that gave rise to the settlement when considering dischargeability under §

---

[4] The "No Admissions" provision states: "None of the Parties admit that they have any liability to any of the other parties, all parties acknowledge that this Comprehensive Settlement Agreement is entered into as a compromise to avoid further expenses and to terminate the Lawsuit, their Claims against one another, and all other disputes between them."

3

523. *Archer v. Warner*, 538 U.S. 314 (2003); *Brown v. Felsen*, 442 U.S. 127 (1979). The Court also denied Star High's summary judgment motion due to insufficient summary judgment evidence. *In re Schwartz* at * 4. Star High's summary judgment evidence was limited largely to a copy of a state court temporary restraining order that suggested Schwartz committed fraud. *Id.* The Court's October 17 Memorandum Opinion noted that the state court temporary restraining order was interlocutory and without preclusive effect on this Court's findings. *Id.*

On November 27, 2007 and December 11, 2007, the Court heard evidence on the dischargeability of Schwartz's debt. Based on the evidence presented, the Court holds that the November 14, 2005 state court judgment against Schwartz is nondischargeable and enforceable according to its terms.

## Jurisdiction and Venue

This Court has jurisdiction of this matter under 28 U.S.C. § 1334. Venue is proper in this District pursuant to 28 U.S.C. §1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

## Section 523

Star High seeks an order finding Schwartz's debt obligation nondischargeable under §§ 523(a)(2)(A), 523(a)(4), 523(a)(19)(A)(ii), and/or 523(a)(19)(B)(ii).

The discharge in bankruptcy is to protect the "honest but unfortunate debtor" and to give the debtor a fresh start. *Grogan v. Garner*, 498 U.S. 279, 287 (1991). There are several debts, however, that for public policy reasons are excepted from discharge. These debts include liabilities the debtor has incurred due to malfeasant activity. *See Cohen v. de la Cruz.*, 523 U.S. 213, 222 (1998). Congress codified this principle in 11 U.S.C. § 523(a). *Id.* (quoting *Grogan*, 498 U.S. at 287) ("The various exceptions to discharge in § 523(a) reflect a conclusion on the

part of Congress 'that the creditors' interest in recovering full payment of debts in these categories outweight[s] the debtors' interests in a complete fresh start.'"); *In re Rodriguez*, 2007 WL 543750 *3 (Bankr. S.D. Tex. Feb. 15, 2007).

"The burden of proof in an adversary proceeding under 11 U.S.C. § 523 is on the creditor who seeks to show that his debt is not to be discharged." *In re Harrell*, 94 B.R. 86, 90 (Bankr. W.D. Tex. 1988) (citing *Hill v. Smith*, 260 U.S. 592 (1923)). The creditor must prove his case by a preponderance of the evidence. *Grogan*, 498 U.S. at 287 (1990).

The Court considers §§ 523(a)(2)(A), 523(a)(4), 523(a)(19)(A)(ii), and 523(a)(19)(B)(ii) separately below.

### *i. 11 U.S.C. § 523(a)(2)(A)*

Section 523(a)(2)(A) excepts from discharge debts "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). The Fifth Circuit has distinguished "actual fraud" from "false pretenses" and "false representations" when defining the elements of nondischargeability under § 523(a)(2)(A). *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir. 1995).

For the debtor's representation to constitute "false pretenses" or a "false representation," the movant must prove: "(1) a knowing and fraudulent falsehood, (2) describing past or current facts, (3) that was relied on by the other party." *See RecoverEdge L.P.*, 44 F.3d at 1293 (5th Cir. 1995) (citing *In re Allison*, 960 F.2d 481, 483 (5th Cir. 1992)).

For a debtor's representation to constitute "actual fraud," the movant must prove: "(1) the debtor made representations; (2) at the time they were made the debtor knew they were false; (3)

the debtor made the representations with the intention and purpose to deceive the creditor; (4) that the creditor relied on such representations; and (5) that the creditor sustained losses as a proximate result of the representations." *RecoverEdge L.P.*, 44 F.3d at 1293.

In the Fifth Circuit, "reasonable reliance is not, as a matter of law, required under section 523(a)(2)(A)." *In re Allison*, 960 F.2d at 485. However, the movant must still show *actual* reliance. "[R]easonableness of reliance is strong circumstantial evidence in the factual determination regarding actual reliance, which is an element of subparagraph (A)."

Star High demonstrated, by a preponderance of the evidence, that Schwartz obtained investments based on false representations.

Simcha Hecht is an agent for Star High.[5] Hecht made investments on behalf of Star High, visited Schwartz in Houston, and otherwise had all direct dealings with Schwartz. Hecht testified that Schwartz represented that he had extensive experience in the housing investment and construction field when, in fact, he had little to no experience. Hecht also testified that, during his visits, Schwartz evaded Hecht's financial inquiries with excuses pertaining to market conditions and other forces beyond Schwartz's control. Hecht, as Star High's agent, made substantial investments after Schwartz's initial representations regarding his experience, and numerous subsequent investments after Schwartz misrepresented the Prime Group's financial condition. Schwartz introduced no significant, credible evidence contradicting Hecht's testimony regarding Schwartz's representation as to his experience.

---

[5] Hecht testified that he had been employed by Star High for more than 20 years, has power of attorney for Star High, and the power of attorney extends to investments.

The Prime Group's failure and testimony from Prime Group employees also support a finding that Schwartz did not have the experience or acumen represented and mislead Hecht as to the Prime Group's finances.

Carey Cox was a mortgage and real estate broker whom Schwartz hired to locate land and list properties. Cox testified that, just prior to a visit by Hecht, Schwartz asked Cox to list some properties as "sale pending," put up sold signs, and otherwise told Cox to mislead Hecht with respect to activity surrounding the property. Cox also testified that Schwartz personally purchased two properties to create false signs of progress. The Court found Cox's testimony highly credible.

Ron Higgens was a Prime Group contract worker responsible for reading contracts, forming companies, filing articles of incorporation with the state, dealing with town-house buyers, and banking. Higgens testified that Schwartz told him to refrain from discussing Prime Group business with Hecht. Higgens also testified that he was not allowed to be alone with Hecht. According to Higgens, when Hecht visited and entered Higgens' office, Schwartz always accompanied Hecht. The Court found Higgen's testimony highly credible.

Based on the evidence presented, the Court finds that Schwartz made false representations to Star High with respect to Schwartz's experience and the Prime Group's finances. The Court finds that Star High made substantial investments based on Schwartz's representations regarding his experience and the Prime Group's finances.

Accordingly, the Court finds that Schwartz's debt to Star High is non-dischargeable under § 523(a)(2)(A).

### *ii. 11 U.S.C. § 523(a)(4)*

#### *Defalcation*

Section 523(a)(4) applies to debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4).

Fraud under § 523(a)(4) involves "intentional deceit, rather than implied or constructive fraud." *In re Swor*, 2008 WL 938940 *5 (Bankr. S.D. Tex. Apr. 4, 2008); *In re Tripp*, 189 B.R. 29 (Bankr. N.D. N.Y. 1995); *In re McDaniel*, 181 B.R. 883 (Bankr. S.D. Tex. 1994); COLLIER ON BANKRUPTCY, ¶ 523.10[1][a]. "A defalcation is a willful neglect of duty, even if not accompanied by fraud or embezzlement." *In re Bennett*, 989 F.2d 779, 790 (5th Cir. 1993) (citing *Moreno v. Ashworth*, 892 F.2d 417, 421 (5th Cir. 1990)). Willful neglect is "essentially a recklessness standard." *In re Felt*, 255 F.3d 220, 226 (5th Cir. 2001) (quoting *Schwager v. Fallas*, 121 F.3d 177, 185 (5th Cir. 1997)). "Thus, willfulness is measured objectively by reference to what a reasonable person in the debtor's position knew or reasonably should have known." *Id*.

Under § 523(a)(4) "a fiduciary is limited to instances involving express or technical trusts." *In re Miller*, 156 F.3d 598, 602 (5th Cir. 1998) (quoting *Tex. Lottery Comm'n v. Tran (In re Tran)*, 151 F.3d 339, 342 (5th Cir. 1998)). A constructive trust is not sufficient to create a fiduciary relationship. *See Angelle v. Reed (In re Angelle)*, 610 F.2d 1335, 1339 (5th Cir. 1980). The trustee's duties must "arise independent of any contractual obligation." *In re Tran*, 151 F.3d at 342 (citing *Angelle*, 610 F.2d at 1339). The trustee's obligations "must have been imposed prior to, rather than by virtue of, any claimed misappropriation or wrong." *Id.* (citing *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333 (1934)); *Angelle*, 610 F.2d at 1339 (A technical trust must "exist prior to the act creating the debt and without reference to that act."). However, the

8

Fifth Circuit recognizes that the "'technical' or 'express' trust requirement is not limited to trusts that arise by virtue of a formal trust agreement, but includes relationships in which trust-type obligations are imposed pursuant to statute or common law." *LSP Inv. P'ship v. Bennett (In re Bennett)*, 989 F.2d 779, 784-85 (5th Cir. 1993) (citing *Moreno v. Ashworth*, 892 F.2d 417, 421 (5th Cir. 1990)).

Accordingly, when "determining whether a particular debtor was acting in a fiduciary capacity for purposes of section 523(a)(4), the Court must look to both state and federal law." *In re Bennett*, 989 F.2d at 784. "The scope of the concept of fiduciary under 11 U.S.C. § 523(a)(4) is a question of federal law; however, state law is important in determining whether or not a trust obligation exists." *Id.* (citing *Angelle v. Reed (In re Angelle)*, 610 F.2d 1335 (5th Cir. 1980)).

In Texas, a fiduciary is a "person owing a duty of integrity and fidelity... apply[ing] to any person who occupies a position of peculiar confidence towards another." *Lee v. Hasson*, 2007 WL 236899 at *8 (Tex. App.—Houston [14 Dist.] Jan. 30, 2007, rev. denied) (citing *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 512 (Tex. 1942)). Under Texas law, a corporate officer owes a fiduciary duty to the corporation. *In re Moreno*, 892 F.2d at 421. "Corporate officers owe fiduciary duties to the corporations they serve and they are without authority to act in any matter in which their interests are adverse to that of the corporation." 15 TEX. JUR. 3d *Corporations* § 283 (2007) (citing *Myer v. Cuevas*, 119 S.W.3d 830 (Tex. App.—San Antonio 2003, no pet); *Pinnacle Data Services, Inc. v. Gillen*, 104 S.W.3d 188 (Tex. App.—Texarkana 2003, pet. denied)). The duty encompasses "at least, a responsibility not to lend [the corporation's] money to himself or corporations controlled by him on less than an arms-length basis." *Id.* (citing *Gearhart Indus., Inc. v. Smith Int'l, Inc.*, 741 F.2d 707, 719 (5th Cir. 1994); *Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567 (Tex. 1963)). A fiduciary duty may

9

also be imposed on managing partners who exercise significant control. *In re Bennett*, 989 F.2d at 789 (noting that, under Texas law, "the issue of control has always been the critical fact looked to by the courts in imposing" fiduciary duties on managing partners).

Star High established by a preponderance of the evidence that Schwartz committed defalcation in breach of a fiduciary duty. Schwartz was unquestionably a fiduciary. Schwartz was manger of the Prime Group. The investors were "silent" partners uninvolved in the Prime Group's daily operations. Schwartz was in charge of locating real estate, soliciting investors, constructing townhouses, and selling the homes. Schwartz controlled virtually all aspects of the Prime Group.

Star High produced significant testimonial evidence showing that Schwartz committed defalcation by advancing Prime Group funds to himself for personal uses. Joe Marukot was an accountant hired by Schwartz to keep the Prime Group's books. Marukot testified that Schwartz took numerous personal advances from the Prime Group. The personal advances included multiple $10,500.00 amounts allegedly transferred to Israel. Schwartz took the $10,500.00 advances monthly for approximately 2 years. Marukot testified that Schwartz transferred approximately $146,777.88 in funds from Prime Group entities to 3 Pipes 1997, an entity personally owned by Schwartz. Marukot testified that Schwartz purchased certain properties in his name, but paid all costs with Prime Group funds. Marukot also testified that, on at least two occasions, the Prime Group paid rent on Schwartz's personal condo.

Other witnesses added additional evidence of defalcation. Higgens testified that Schwartz directed him to transfer funds from Schwartz's account to Schwartz's wife in Israel 5-6 times and in the amount of $5,600.00 per transfer. Cox testified that he accompanied Schwartz on gambling trips. According to Cox, Schwartz paid the expenses and billed them to the Prime

Group. Cox's testimony was supported by Marukot, who testified that Schwartz sometimes asked him to write a check from the Prime Group accounts before going on a gambling trip.

Schwartz testified that some, if not most of the advances were not personal advances but expenditures for business expenses or repayment of personal loans made by Schwartz to the Prime Group. However, Schwartz produced no promissory notes or other documents supporting his contention that the advances were for repayment of loans. Moreover, the Court does not see why a "loan" from Schwartz would not be considered an "investment" like the funds provided by Star High. Schwartz and Star High were both partners. The partners were not to receive compensation for their investments until the townhouses were sold and a profit realized.

Schwartz contends that at least some personal advances were taken with Hecht's permission. Schwartz also testified that he showed Hecht the Prime Group's general ledgers on each visit and otherwise hid nothing from Hecht. However, Hecht testified that Schwartz never showed him a general ledger or bank statement. Rather, Hecht testified that Schwartz only showed him a 1-2 page document and tried to avoid discussing the Prime Group's financial condition.

The Court did not find Schwartz's testimony credible. Hecht testified that Schwartz was not to be paid a salary or otherwise take money from the Prime Group for personal reasons. A document produced by plaintiffs entitled Regulations of PPP Investors No. 2, L.L.C. expressly prohibits personal payments to Schwartz. Paragraph 3.12 provides: "Managers, as such, shall not receive any stated salary for their services . . ."[6] Mr. Marukot testified that he was not aware

---

[6] Paragraph 3.12 provides in its entirety: "<u>Compensation of Managers.</u> Mangers, as such, shall not receive any stated salary for their services, but shall receive such compensation for their services as may be from time to time agreed upon by a Majority in Interest of the Members. In addition, a fixed sum and expenses of attendance, if any, may be allowed for attendance at each regular or special meeting of the Managers, provided that nothing contained in these Regulations shall be construed to preclude any Manager from serving the Company in any other capacity and receiving compensation for such service."

of any permissible uses of investments other than to purchase land and fund construction. Hecht denied authorizing Schwartz to take advances for personal use.

The Fifth Circuit upheld a bankruptcy court finding of defalcation under similar facts. *In re Moreno*, 892 F.2d at 421. The Fifth Circuit stated:

> The evidence shows that while Moreno was an officer of PEEC, he directed the transfer of nearly $200,000 to himself and companies in which he owned a 50% or greater interest. As the courts found, no loan agreements, promissory notes, security agreements or interest were provided in connection with these advances. No portion of them was repaid. No corporate purpose of PEEC was furthered by the transfers. About $99,000 of the loans were initially booked by PEEC as advances for officers' salaries.
>
> Whether the money served Moreno personally, as the bankruptcy court found, is significant but not necessarily determinative. A defalcation is a willful neglect of duty, even if not accompanied by fraud or embezzlement. *See* L. King, 3 Collier on Bankruptcy ¶ 523.14, at 523-93 to 523-95 (15th ed. 1988), quoting *Central Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510 (2d Cir. 1937) (L. Hand, J.). Moreno does not dispute that he owed a fiduciary duty to PEEC because he was an officer. This duty encompassed, at least, a responsibility not to lend PEEC's money to himself or corporations controlled by him on less than an arms-length basis. *See generally Gearhart Industries, Inc. v. Smith International, Inc.*, 741 F.2d 707, 719 (5th Cir. 1984). *See also International Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567 (Tex. 1963).

Based on the evidence presented, the Court finds that Schwartz committed defalcation.[7]

Because the Court finds that Schwartz committed defalcation while acting in a fiduciary capacity, the Court does not also consider whether Schwartz committed fraud.

---

[7] Mr. Marukot prepared an accounting on behalf of Hecht dated January 12, 2003 indicating that Schwartz owed the Prime Group $394,567.26. Mr. Marukot prepared a second accounting on behalf of Schwartz dated January 31, 2003 indicating that Schwartz owed the Prime Group $181,688.36. Mr. Marukot's testimony with respect to which of the two exhibits portrayed the correct amount varied. Mr. Marukot stated that he believed exhibit 9 represented the correct amount, though it was not without room for error. Mr. Marukot signed a state court affidavit that states that he believed Schwartz owed the Prime Group approximately $394,567.26 for advances to Schwartz personally or Schwartz's 3 Pipes company.[7] However, Marukot conceded that he could not state that exhibit 8 was definitely right or wrong. Marukot's affidavit stated that the $394,567.26 amount was "roughly correct." Based on the evidence presented, the Court finds that $300,00.00 is a reasonable approximation of the personal advances made to Schwartz and 3 Pipes. Nevertheless, because the Court holds that the state court judgment itself is excepted from discharge, the precise figure is not required.

*Embezzlement*

Embezzlement for purposes of § 523(a)(4), is not limited to instances where a fiduciary duty exists. 4 RESNICK & SOMMER COLLIER ON BANKRUPTCY ¶ 523.10[1][d] (15th ed. 2005) ("The phrase 'while acting in a fiduciary capacity' clearly qualifies the words 'fraud or defalcation' and not 'embezzlement' or 'larceny'"). Embezzlement is defined by federal law. *Rainey v. Davenport (In re Davenport)*, 353 B.R. 150, 199 (Bankr. S.D. Tex. 2006) (citing *In re Hayden*, 248 B.R. 519, 525 (Bankr. N.D. Tex. 2000)). Under federal law, embezzlement is a "fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." *In re Miller*, 156 F.3d 598, 602 (5th Cir. 1998). To constitute embezzlement, the fraudulent appropriation must be "of another's property." *In re Davenport*, 353 B.R. at 199; *In re Dobek*, 278 B.R. 496, 509 (Bankr. N.D. Ill. 2002) ("To prove embezzlement, Plaintiff must show that debtor appropriated the funds for her own benefit, and that it did so with fraudulent intent.") (quoting *In re Weber*, 892 F.2d 534, 538 (7th Cir. 1989)).

"To 'appropriate' is to exercise control over or to take possession of property." *In re Davenport*, 353 B.R. at 200 (citing *Hayden*, 248 B.R. at 525). Fraudulent intent is "an intent to deceive another person and thereby induce such other person to transfer, alter or terminate a right with respect to property." *Id.* (citing *First Nat'l Bank of Midlothian v. Harrell (In re Harrell)*, 94 B.R. 86, 91 (Bankr. W.D. Tex. 1988)). "Fraudulent intent may be inferred from the conduct of the Debtor and from circumstances of the situation." *Harrell*, 94 B.R. at 91 (citing *U. S. v. Powell*, 413 F.2d 1037 (4th Cir. 1969)).

Based on the facts stated with respect to Schwartz's defalcation, the Court finds that Star High established, by a preponderance of the evidence, that Schwartz embezzled money from the Prime Group.

13

### *iii. 11 U.S.C. § 523(a)(19)(A)(ii) and § 523(a)(19)(B)(ii)*

Because the Court finds Schwartz's debt to Star High nondischargeable under § 523(a)(2)(A) and 523(a)(4), the Court does not discuss § 523(a)(19)(A)(ii) and 523(a)(19)(B)(ii).

## Directed Verdict

At the close of Star High's evidence, Schwartz moved for directed verdict and re-urged under Federal Rule of Civil Procedure 56(d) Schwartz's previously denied summary judgment motion. Schwartz alleged that Star High only produced evidence of § 523(a)(4) conduct. As to § 523(a)(4), Schwartz alleged that Star High produced no evidence that Schwartz owed a fiduciary duty to Star High or otherwise committed fraud or defalcation in a fiduciary capacity. Schwartz noted that all personal transfers came from Prime Group entities. If Schwartz owed a fiduciary duty, the duty was only owed to those entities. Essentially, Schwartz contended that Star High only produced evidence of a breach of contract, namely, whether the personal advances violated the Prime Group's regulation prohibiting compensation.

During the evidentiary hearing, the Court orally denied Schwartz's motions. Under *Archer* and *Brown*, Star High has the burden of showing that Schwartz did in fact owe a fiduciary duty and committed fraud or defalcation in violation of that duty. However, under *Archer* and *Brown*, the question raised by Schwartz is largely irrelevant. The Supreme Court has repeatedly stated that, in a § 523 adversary proceeding, the Court must look at the underlying facts and determine whether a defendant engaged in the conduct proscribed by the relevant § 523 provision. *Archer v. Warner*, 538 U.S. 314 (2003); *Brown v. Felsen*, 442 U.S. 127 (1979). The inquiry focuses on conduct. Whether or not Schwartz owed a fiduciary duty to Star High does not matter so long as Schwartz owed a fiduciary duty to the Prime Group and in fact breached

that duty. As discussed earlier in this Memorandum Opinion, Schwartz owed a fiduciary duty and breached that duty by committing defalcation and embezzlement. The breach of that fiduciary duty led to the debt evidenced by the state court judgment. Moreover, Schwartz, as manager, owed a fiduciary duty to Star High in addition to the Prime Group. Star High was a silent partner. Managing partners exercising extensive control over the partnership owe fiduciary duties to other partners. *In re Bennett*, 989 F.2d 779 (5th Cir. 1993).

Additionally, Star High demonstrated, by a preponderance of the evidence, embezzlement. Embezzlement under § 523(a)(4) does not require a fiduciary duty. 11 U.S.C. § 523(a)(4).

Schwartz also argued that the evidence only showed payments made by Hecht, not Star High. Consequently, Schwartz contended that any fraud claim should have been brought by Hecht. This adversary proceeding was filed by Star High, not Hecht.

The Court rejected Schwartz's argument. Hecht is an agent for Star High. Hecht testified that he has power of attorney for Star High and the power of attorney extends to investments. Hecht also testified that he has been employed with Star High for over 20 years. The Court found Hecht's testimony with respect to his relationship with Star High credible. Schwartz offered no evidence suggesting Hecht was not an agent of Star High. Any testimony by Schwartz suggesting that all of Hecht's investments were personal investments independent of Star High does not overcome the evidence produced by Star High.

The Court also orally denied Schwartz's motion under Rule 56(d). The Court found that Star High showed, by a preponderance of evidence, that Schwartz took money for personal use and in violation of a fiduciary duty owed to the Prime Group's shareholders. The testimony,

financial records, and Schwartz's own admissions as to taking personal advances, are more than sufficient to deny summary judgment for Schwartz on Star High's § 523(a)(4) claim.

## Amount of Non-Dischargeable Debt

Section 523 precludes discharge of *all* obligations arising from the prohibited conduct. *Cohen v. de la Cruz*, 523 U.S. 213, 118 S. Ct. 1212 (U.S. 1998) (holding that punitive damages and attorneys' fees recovered in a fraud action are non-dischargeable); *In re Gober*, 100 F.3d 1195, 1208 (5th Cir. 1996). "Once it is established that specific money or property has been obtained by fraud, however, 'any debt' arising therefrom is excepted from discharge." *Id.* at 214. The Supreme Court specifically rejected an argument that § 523(a) debts are limited only to the value of the money or property obtained by the conduct prohibited by § 523(a). *Id.* at 219. The Supreme Court noted:

> Section 523(a) defines several categories of liabilities that are excepted from discharge, and the words "debt for" introduce many of them . . . None of these use "debt for" in the restitutionary sense of "liability on a claim to obtain;" it makes little sense to speak of "liability on a claim to obtain willful and malicious injury" or "liability on a claim to obtain fraud or defalcation." Instead, "debt for" is used throughout to mean "debt as a result of," "debt with respect to," "debt by reason of," and the like.

*Id.* at 219–20.

The Court finds that Schwartz's misrepresentations and advances to himself constitute false representations, defalcation, and embezzlement under §§ 523(a)(2)(A) and 523(a)(4). The Court finds that Schwartz and Hecht's settlement agreement and the accompanying promissory note arose from the misrepresentations and personal advances. Accordingly, the state court judgment arising from Schwartz's default under the settlement agreement and promissory note is nondischargeable.

## Conclusion

Based on the evidence presented, the Court declares that the November 14, 2005 state court judgment is nondischargeable and enforceable according to its terms. A Separate Order will be issued.[8]

Signed at Houston, Texas, on August 7, 2008.

---
MARVIN ISGUR
United States Bankruptcy Judge

---

[8] Paragraph 17 of the Settlement Agreement provides attorneys' fees for the prevailing party in any litigation arising from the Settlement Agreement. Star High's attorney offered no evidence of fees and costs incurred in the present dispute. Accordingly, the Judgment does not include fees and costs incurred in this adversary proceeding.